IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SNAPPY SHEDS, INC., MARK BERRY,
REGINA BONEY, PHILIP J. MONTOYA,
Trustee of the Chapter 7 Bankruptcy Estates of
SUNLAND STEEL CORPORATION, KEN
and DORIS BERRY, and MARTIN and
BRENDA GOMEZ,

        Plaintiffs,

vs.                                                      No. CIV 03-0947 RB/KBM

HOME DEPOT, U.S.A., INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant (Home Depot's) Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 11), filed on January 9, 2004. Jurisdiction is founded upon on 28 U.S.C. § 1332 (diversity). Having reviewed the submissions of the parties and the relevant law, I find that the motion should be granted as to the Texas Deceptive Trade Practices Act (TDTPA) claim, and denied as to the fraud and New Mexico Unfair Practices Act (NMUPA) claims.

**I.    Background.**

Ken and Doris Berry, and Martin and Brenda Gomez are residents of New Mexico. (Compl. ¶¶ 1-2.) Mark Berry and Regina Boney are currently residents of Washington, but were residents of New Mexico at all times material. (Compl. ¶3.) Sunland Steel Corporation and Snappy Sheds, Inc. are New Mexico corporations. (Compl. ¶¶ 4-5.) Philip Montoya is a resident of New Mexico. (Compl. ¶ 6.) Home Depot, U.S.A., Inc. is a Delaware corporation. (Compl. ¶ 7.)

In 1997, some of the individual Plaintiffs purchased Sunland Steel Corporation, a rebar fabricator and seller in Truth or Consequences (T or C), New Mexico. (Compl. ¶ 8.) In 1999, the individual Plaintiffs began to design and build portable metal storage sheds in T or C. (Compl. ¶ 9.) In May 1999, Snappy Sheds was incorporated to pursue the business of manufacturing and selling the sheds. (Compl. ¶10.) In mid-1999, Plaintiffs began marketing the sheds. (Compl. ¶11.) The Complaint does not specify how each individual Plaintiff to relates the corporations or how the corporations relate to each other.

In April 2000, Mark Berry and Regina Boney demonstrated the sheds at a Home Depot store in Lubbock, Texas. (Compl. ¶12.) After the demonstration, Home Depot's representatives expressed great interest in marketing the sheds and arranged for further demonstrations. (Compl. ¶13.) In May 2000, Ken Berry, Mark Berry, Martin Gomez, and "others" demonstrated the sheds at the Las Cruces, New Mexico Home Depot. (Compl. ¶15.) Following the demonstration, store managers from Texas and New Mexico Home Depot stores, as well as regional personnel, expressed further interest in marketing the sheds. (*Id*.) Paul Wyman, Divisional Installation Manager for Home Depot stated that he wanted "Plaintiffs" to make "their" sheds and services available for Home Depot marketing in New Mexico and West Texas, and later make them available for the Southwest Division and nationwide. (Compl. ¶¶ 16-17.)

On May 12, 2000, Wyman and another Home Depot manager visited Plaintiffs at their production facilities in T or C. (Compl. ¶ 18.) Plaintiffs allege that Wyman represented to them that he had authority to place the sheds in Home Depot stores throughout the Southwest Division and cause them to be aggressively and professionally marketed. (*Id*.) On the same day, Wyman executed an "Installer Agreement" with Martin Gomez, as "President and/or Owner of Sunland Steel Corp."

2

(Def. Ex. A.) Relying on Home Depot's representations, Plaintiffs expanded their production capacity and turned away other opportunities. (Compl. ¶ 20.)

Plaintiffs contend that Home Depot failed to professionally and aggressively market the sheds, resulting in lower sales than promised. (Compl. ¶ 21.) When shed sales at the New Mexico and West Texas Home Depot stores failed to approach Plaintiff's production capacity, Plaintiffs asked Home Depot to carry the sheds in additional stores. (Compl. ¶ 22.) Starting in January 2001, Home Depot began carrying the sheds in additional stores in Texas. (Compl. ¶ 23.) Plaintiffs built additional demonstration models, acquired new equipment and borrowed additional funds. (Compl. ¶ 24.) Mark Berry and Regina Boney moved to the Dallas area to insure product quality control and timely installation. (*Id*.) Plaintiffs repeatedly asked Home Depot to carry the sheds in additional stores, but Home Depot refused. (Compl. ¶ 26.)

On July 27, 2001, Plaintiffs informed Home Depot that, due to financial hardship, they could no longer supply the sheds for marketing by Home Depot. (Compl. ¶ 27.) On November 26, 2001, Ken and Doris Berry filed for Chapter 7 bankruptcy. (Compl. ¶ 28.) On December 14, 2001, Martin and Brenda Gomez filed for Chapter 7 bankruptcy. (Compl. ¶ 29.) On March 11, 2002, Sunland Steel Corporation filed for Chapter 11 bankruptcy. (Compl. ¶ 30.) Philip Montoya was appointed trustee of the bankruptcy estates. (Compl. ¶¶ 28-30.)

On July 23, 2003, Plaintiffs filed a complaint in the First Judicial District, County of Santa Fe, State of New Mexico, alleging fraud, violation of the NMUPA, and violation of the TDTPA. On August 14, 2003, Defendant removed the matter to this court, pursuant to 28 U.S.C. § 1441(a).

3

**II.     Summary of Arguments.**

Home Depot moves to dismiss, or in the alternative, for summary judgment on the grounds that the individual Plaintiffs are not real parties in interest; Plaintiffs have not pleaded and cannot prove the essential elements of a fraud claim; the individual Plaintiffs have failed to state a TDTPA claim because they were not consumers as defined by Texas law; the individual Plaintiffs have failed to state a NMUPA claim because they did not purchase or lease marketing services for themselves as individuals; Plaintiffs do not qualify as consumers because the marketing services were incidental to the primary purpose of selling a product; the written contract limits Sunland Steel to a breach of contract claim; and New Mexico and Texas law preclude Plaintiffs from repackaging contract claims as fraud or unfair practices claims.

Plaintiffs respond that the individual Plaintiffs have standing to pursue their claims; the written agreement does not preclude any of the claims; the fraud and unfair practices claims are not "repackaged" contract claims; and Defendants raised the same arguments and lost in a similar case in state court.

Home Depot replies that the individual Plaintiffs lack standing because Home Depot had no duty to them as individuals and they did not suffer a direct and distinct injury; the choice of law provision implicates Georgia law, which limits Plaintiffs to a breach of contract claim; the individual Plaintiffs have no claims under the TDTPA or the NMUPA; the corporate Plaintiffs cannot assert claims under the TDTPA because they are not "consumers" within the meaning of the TDTPA; the corporate Plaintiffs cannot pursue TDTPA or NMUPA remedies because their claims are based on the contract; the economic loss doctrine bars Plaintiffs' extra-contractual claims; and there is no basis for collateral estoppel.

**III.     Standard.**

When matters outside the pleadings are presented and considered by the court, the motion must be treated as a motion for summary judgment. *See* FED. R. CIV. P. 12(b). Before the motion is converted to a summary judgment motion, all parties must be given a reasonable opportunity to present all material made pertinent by Rule 56. *Id*.; *see also* FED. R. CIV. P. 56. Plaintiffs have presented their response under the Rule 56 standard with supporting materials. The parties had a reasonable opportunity to present all pertinent material. Under these circumstances, the motion should be treated as a motion for summary judgment.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id*.

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving

5

party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Muñoz,* 221 F.3d at 1164. It is insufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

**IV.    Discussion.**

    **A.  Whether the individual Plaintiffs qualify as real parties in interest.**

"[T]he real party in interest is the one who, under applicable substantive law, has the legal right to bring suit." *Fed. Deposit Ins. Corp. v. Gelderman, Inc.*, 975 F.2d 695, 698 (10th Cir. 1992). Rule 17 of the Federal Rules of Civil Procedure provides:

    Every action shall be prosecuted in the name of the real party in interest. An executor,

> administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

FED. R. CIV. P. 17(a).

The purpose of the rule is to assure a defendant that a judgment will be final and that res judicata will protect the defendant from subsequent suits by a party actually entitled to recover. *Weiburg v. GTE Southwest, Inc.*, 272 F.3d 302, 306 (5th Cir. 2001); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1543 (1990).  In a diversity case, the federal court must apply the law of the forum state to all substantive issues.  *Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, 24 F.3d 125, 128 (10th Cir. 1994).  Therefore, the court must look to New Mexico substantive law to determine whether the individual Plaintiffs are real parties in interest.

As a general rule, New Mexico law provides that a corporation and a shareholder are separate entities, and a shareholder of a corporation does not have an individual right of action against a third party for damages that result because of an injury to the corporation.  *Marchman v. NCNB Texas Nat. Bank*, 120 N.M. 74, 81, 898 P.2d 709, 716 (1995). When a corporation is directly injured, shareholders, employees, and creditors of the corporation may suffer indirect injury.  *Id*.  The corporation has the right to bring an action against the wrongdoer, while other parties suffering indirect injuries cannot individually assert the corporate cause of action.  *Id*.

The two exceptions to this general rule are (1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, or (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders. *Marchman*, 120 N.M. at 82, 898 P.2d at 717. There must be a direct injury to the shareholder in his or her individual capacity, independent of any duty to the corporation, before the shareholder is entitled to sue. *Id.*

The individual Plaintiffs argue that they have suffered direct injuries, separate from the injury sustained by Sunland Steel. In support of this argument, Plaintiffs have submitted the Affidavits of Martin Gomez, Ken Berry, and Mark Berry. According to these affidavits, the individual Plaintiffs "understood" that Wyman was talking to them not just as part of their family-owned businesses, but also as individuals when he met with them on May 12, 2000. (*Id.*) Wyman asked Plaintiffs if they could expand their production capacity in T or C, and whether they would be willing to build production facilities elsewhere, such as in Dallas, Texas. (Pls. Exs. A, B, and C.) Wyman represented to all six individual Plaintiffs that he had authority to place the sheds in enough Home Depot stores to sell as many sheds as Plaintiffs could produce. (*Id.*) Wyman described Home Depot's marketing services and made it clear that he did not want Plaintiffs to sell to any of Home Depot's competitors. (*Id.*)

Plaintiffs aver that the Martins, Berrys, and Boney personally relied on Wyman's representations, and that they took several concrete steps to expand shed production. (Pls. Exs. A, B, and C.) The individual Plaintiffs incurred personal debts to buy materials and tools, personally guaranteed corporate debt, and worked for little or no compensation. (*Id.*) Mark Berry and Boney moved to Dallas to facilitate sales and installation. (*Id.*) When Home Depot failed to place the sheds in enough stores to sell their production capacity, the individual Plaintiffs suffered direct financial

8

losses and four of them filed for bankruptcy. (*Id.*)

Home Depot has submitted no evidence in support of its contention that Home Depot dealt with the individual Plaintiffs solely in their capacity as agents of Sunland Steel. In this regard, Home Depot has failed to meet its summary judgment burden. *See Celotex*, 477 U.S. at 323. Plaintiffs have submitted affidavits indicating that the May 12, 2000 communications from Wyman were directed not only to Sunland Steel, but also to the individual Plaintiffs. (Pls. Exs. A, B and C.) The affidavits indicate that the individual Plaintiffs suffered direct injuries, independent of the injury to Sunland Steel. *Id*. If they can prove their individual losses, the individual Plaintiffs would have standing to sue in their individual capacities. Viewed in the light most favorable to Plaintiffs, the affidavits are sufficient to create a disputed issue of material fact. FED. R. CIV. P. 56(c). The motion should be denied with respect to Home Depot's Rule 17(a) argument.

**B.     Whether Plaintiffs have pleaded or can prove the essential elements of fraud.**

New Mexico law defines fraud as a misrepresentation of fact, known by the maker to be untrue, made with the intent to deceive and to induce the other party to act on it, and on which the other party relies to his detriment. *Meiboom v. Carmody*, 134 N.M. 699, 702, 82 P.3d 66, 69 (Ct. App. 2003) (citing *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 14, 820 P.2d 1323, 1328 (1991)). A failure to disclose information can constitute fraud. *Golden Cone Concepts*, 113 N.M. at 12-13, 820 P.2d at 1326-27 (holding that the defendant's failure to disclose important information about low customer traffic constituted fraud sufficient to justify rescission of a contract). However, an action for fraud will ordinarily not lie as to a pattern of conduct based on promises that future events will take place. *Register v. Roberson Constr. Co.*, 106 N.M. 243, 246, 741 P.2d 1364, 1367 (1987).

Home Depot has submitted evidence that the May 12, 2000 meeting resulted in a written contract between Home Depot and Sunland Steel Corporation. (Def. Ex. A.) It is undisputed that the individual Plaintiffs, with the exception of Gomez, are not parties to the contract. However, none of the Plaintiffs are suing on the contract. Plaintiffs allege that Wyman wrongfully represented that he had authority to place the sheds in enough Home Depot stores to sell as many sheds as Plaintiffs could produce and that they individually relied on this statement to their detriment. Although Plaintiffs assert that Wyman's predictions turned out to be untrue, it is not possible to discern Wyman's intent from the current record. Viewed in the light most favorable to Plaintiffs, the record contains evidence from which a jury could legitimately find that Wyman's statements were fraudulent. Summary judgment would be inappropriate under these circumstances. FED. R. CIV. P. 56(c).

### C.    Whether Plaintiffs qualify as consumers within the meaning of TDTPA.

Home Depot argues that Plaintiffs have failed to state a TDTPA claim because Plaintiffs were not consumers as defined by the TDTPA. Under the TDTPA, a consumer is defined as an individual, partnership, or corporation who seeks or acquires, by purchase or lease, any goods or services. TEX. BUS. & COMM. CODE ANN. § 17.45(4) (Vernon 2002); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981). To qualify as a consumer, a plaintiff must prove that (1) it sought or acquired the goods or services by purchase or lease, and (2) the goods or services form the basis of the complaint. *Cameron*, 618 S.W.2d at 539.

A refusal to sell goods or services is not a complaint based on the goods or services for purposes of TDTPA consumer status. *Roof Systems, Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 440 (2004). Where a complaint is based on suspension of services or sales, and not on any fault in the services, the plaintiffs do not qualify as consumers within the meaning of the TDTPA. *Brittan*

*Communications Int'l Corp. v. Southwestern Bell Tel. Co.*, 313 F.3d 899, 902-03 (5th Cir. 2002).

Plaintiffs base their TDTPA claim on their contention that Home Depot wrongfully suspended its marketing services of the sheds. Because the complaint is not based on any goods or services that Plaintiffs sought or acquired from Home Depot, Plaintiffs have failed to state a TDTPA claim. Moreover, a fair reading of the Complaint indicates that the wrongful acts occurred in New Mexico. The only act alleged to have occurred in Texas was the Lubbock demonstration. Plaintiffs allege that Home Depot representatives expressed interest in the sheds in Lubbock, but they do not allege that the Home Depot representative engaged in wrongful conduct. Thus, the TDTPA is inapplicable. Home Depot's motion to dismiss should be granted with respect to the TDTPA claim.

**D.     Whether Plaintiffs have standing to bring a NMUPA claim.**

Home Depot argues that Plaintiffs lack standing under the NMUPA because the individual Plaintiffs and Snappy Sheds did not purchase marketing services from Home Depot. The NMUPA "constitutes remedial legislation" and must be interpreted liberally to facilitate and accomplish its purposes. *Salmeron v. Highlands Ford Sales, Inc.*, 271 F.Supp.2d 1314, 1318 (D. N.M. 2003) (citing *State ex rel. Stratton v. Gurley Motor Co.*, 105 N.M. 803, 808, 737 P.2d 1180, 1185 (Ct. App. 1987)). The NMUPA prohibits "unfair or deceptive trade practices and unconscionable trade practices." N. M. STAT. ANN. § 57-12-3 (2000 Repl. Pamp.) An "unfair or deceptive trade practice" is defined as: any false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person. N. M. STAT. ANN. § 57-12-2(D) (2003 Cumm. Supp.) The definition of unfair or deceptive trade practices "includes but is not limited to" seventeen specific

11

practices which are enumerated in the statute. N. M. STAT. ANN. § 57-12-2(D)(1)-(17). The non-exhaustive list of unfair or deceptive trade practices includes: "using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive." N. M. STAT. ANN. § 57-12- 2(D)(14).

"Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action . . . ." N. M. STAT. ANN. § 57-12-10 (2000 Repl. Pamp.)  The Act provides a private remedy to persons likely to suffer pecuniary harm for conduct involving either misleading identification of business or goods or false or deceptive advertising. *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991).

A NMUPA claim has four elements. *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991).  First, the complaining party must show that the defendant made an "oral or written statement, visual description or other representation" that was either false or misleading. *Id*. Second, the false or misleading representation must have been "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or ... collection of debts."  *Id*.  Third, the conduct complained of must have occurred in the regular course of the defendant's trade or commerce.  *Id*.  Fourth, the representation must have been of the type that "may, tends to or does, deceive or mislead any person." *Id*.

Home Depot has not submitted any evidence other than the May 12, 2000 contract.  Plaintiffs have submitted evidence that, if true, could show that Wyman made misleading representations in connection with the sale of marketing services in the regular course of business and that the statements mislead them.  (Pls. Exs. A, B and C.)  Viewed in the light most favorable to Plaintiffs,

12

the record contains evidence from which a jury could find that Home Depot violated the NMUPA. Accordingly, summary judgment would be inappropriate.  FED. R. CIV. P. 56(c).

### E.   Whether the contract limits Sunland Steel to a breach of contract claim.

Home Depot asserts that Georgia law applies due to a choice of law provision in the contract, and that Georgia law limits Sunland Steel to pursuing a breach of contract claim.  A federal court sitting in diversity must apply the substantive law of the state in which it sits, including that state's choice of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  This court must apply New Mexico's rule regarding the enforceability of a choice of law provision.  *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1360 (10th Cir.1990).

New Mexico law holds that a choice of law provision is limited to substantive aspects of the contract, unless the provision specifically describes other matters.  *Nez v. Forney*, 109 N.M. 161, 163, 783 P.2d 471, 473 (1989).  The choice of law provision in the May 12, 2000 contract states that "[t]his Agreement shall be construed and enforced in accordance with the laws of the State of Georgia." (Def. Ex. A at § 14.12).  Plaintiffs are alleging tort claims; they are not alleging contract claims.  By its plain terms, the choice of law provision is limited to construction and enforcement of the contract.  Therefore, the choice of law provision in the May 12, 2000 contract is inapplicable to the claims alleged herein.

Plaintiffs are alleging tort claims.  With respect to tort causes of action, New Mexico follows the doctrine of lex loci delicti and applies the law of the state in which the wrongful conduct occurred.  *Torres v. State*, 119 N.M. 609, 613, 894 P.2d 386, 390 (1995).  Because the alleged wrongful acts occurred in New Mexico, the law of New Mexico applies to this case.

> **F.   Whether New Mexico law bars Plaintiffs from repackaging contract claims as fraud or unfair practices claims.**

A contract does not preclude a party from raising claims independent of the contract.  *See Golden Cone Concepts*, 113 N.M. at 12, 820 P.2d at 1326.  The existence of the contract does not bar Plaintiffs' claims.

**V.   Conclusion.**

The motion should be granted as to the TDTPA claim, and denied as to the fraud and NMUPA claims.  Although I have concerns as to whether the Complaint satisfies the requirements of FED. R. CIV. P. 9(b), I decline to address this issue sua sponte.

**WHEREFORE,**

**IT IS ORDERED** that Home Depot's Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 11), filed on January 9, 2004, is **GRANTED AS TO THE TDTPA CLAIM, AND DENIED AS TO THE FRAUD AND NMUPA CLAIMS**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

14